**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**EMERGING ASIA PTE, Ltd.**
d/b/a
**EMERGING STRATEGY**
16 Raffles Quay
#41-01 Hong Leong Building
Singapore 048581

and

**ADIL HUSAIN,**
4 Cairnhill Rise
The Cairnhill #06-03
Singapore 229740
Plaintiffs,

v.

**VLADIMIR TINTCHEV**
Serve:
4720 Brandywine St., N.W.
Washington, D.C. 20016,

and

**EDWARD HAHN ERNST**
Serve:
163 Attorney Street
Apt. 3C
New York, NY 10003,

Defendants.

Case: 1:17-cv-00287
Assigned To : Moss, Randolph D.
Assign. Date : 2/15/2017
Description: TRO/PI

## COMPLAINT FOR MONETARY DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs, Emerging Asia PTE, Ltd., d/b/a Emerging Strategy, and Adil Husain, (collectively, "Plaintiffs") by undersigned counsel, bring this action against Defendants, Vladimir Tintchev ("Tintchev") and Edward Ernst ("Ernst"), for monetary damages and injunctive relief, and in support thereof, state as follows:

## NATURE OF ACTION

1. This is a civil action brought by an employer against two former employees, Defendants Tintchev and Ernst, who have intentionally and wrongfully stolen proprietary customer and other information from Plaintiff Emerging Strategy, are using that proprietary information to disparage and defame Emerging Strategy and interfere with Emerging Strategy's current and prospective customer relationships, and have overtly threatened to continue this wrongful conduct as a means of extracting certain claimed commissions from Emerging Strategy. This action seeks monetary damages for the breaches associated with such conduct and emergency injunctive relief for the immediate cessation of the conduct and the return of Emerging Strategy's stolen property to it. Plaintiffs also seek injunctive relief that enjoins Defendant Tintchev from having contact with any Emerging Strategy employee or its office in Arlington, Virginia given that Tintchev keeps unlicensed firearms in his residence in this District.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because there exists complete diversity of citizenship between the Plaintiffs and the Defendants and because the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

3. Venue in this District is proper pursuant to 28 U.S.C. § 1391 because 1) one of the Defendants resides in this District, 2) a substantial part of the events giving rise to the Plaintiffs' claims occurred here, and 3) one of the Defendants transacts business in this District in furtherance of the civil conspiracy described below.

## PARTIES

4. Plaintiff, Emerging Asia PTE, Ltd., d/b/a Emerging Strategy ("Emerging Strategy") is a Singapore corporation, in the process of establishing its place of business in the United States in Arlington, Virginia. Emerging Strategy is a provider of decision support for global business companies through targeted, customized, and insightful market intelligence.

5. Plaintiff, Adil Husain, ("Husain") a natural person, principally resides in Singapore and is the Managing Director of Emerging Strategy. From time to time, Husain visits Virginia or Washington, DC regarding the establishment of Emerging Strategy's business.

6. Defendant, Vladimir Tintchev, a natural person, upon information and belief, is a citizen of the District of Columbia, who resides at 4720 Brandywine St., N.W., Washington, DC 20016. Tintchev was a Director of Sales for Emerging Strategy from April 22, 2016 until Emerging Strategy terminated his employment on February 9, 2017.

7. Defendant, Edward Ernst, a natural person, upon information and belief, is a citizen of the state of New York, who resides at 163 Attorney Street, Apt. 3C, New York, NY 10003. Ernst was a Director of Sales for Emerging Strategy from June 1, 2016 until he resigned from Emerging Strategy on February 3, 2017.

## FACTS

8. On April 11, 2016 Emerging Strategy extended a written Offer of Employment to Tintchev for the position of Director of Sales to commence on April 22, 2016. Tintchev Offer of Employment, attached as Exhibit 1.

9. On April 11, 2016, Tintchev executed and accepted Emerging Strategy's Offer of Employment. See Exhibit 1.

10. On May 30, 2016, Emerging Strategy extended a written Offer of Employment to Ernst for the position of Director of Sales to commence on June 13, 2016. Ernst Offer of Employment, attached as Exhibit 2.

11. On June 1, 2016, Ernst executed and accepted Emerging Strategy's Offer of Employment. See Exhibit 2.

12. Pursuant to Emerging Strategy's usual and customary practice and policy, the Offer of Employment included a Confidentiality Agreement provision, which states, in pertinent part,

> As condition of employment, you will be required to execute the Company's confidentiality agreement and non-solicitation agreement.

13. Paragraph 1 of Emerging Strategy's Mutual Confidentiality & Non-Disclosure Agreement ("Confidentiality & NDA") expressly defines the term "Confidential Information," as follows:

> As used in this Agreement, the term "Confidential Information" means information that has been or that may be disclosed, in either oral, written, graphic, electronic or any other form, by one party (the "Provider") to the other (the "Recipient"), including, but not limited to, information concerning all aspects of the business of the Provider and its affiliates; financial statements, business and marketing plans; customer/client transactions; customer/client lists; pending or threatened litigation; prospective contractual relations, collection, tabulation and analysis of data; computer programming methods, source code, object code, designs, specifications, plans, drawings and similar materials; programs, databases, inventions (whether or not eligible for legal protection under patent, trademark, or copyright laws) research and development; work in progress; and any other document marked "confidential." The existence of the Discussions is considered Confidential Information of both parties. Confidentiality & NDA, attached as Exhibit 3.

14. The scope of the term "Confidential Information," includes:

- customer/client transactions;
- customer/client lists;
- prospective contractual relations;
- tabulation and analysis of data;
- databases;
- research and development; and
- work in progress.

15. Paragraph 2 of the Confidentiality & NDA expressly prohibits the disclosure of "Confidential Information," stating,

> The Recipient shall:
>
> a) not use or disclose any Confidential Information of the Provider to third parties other than in conformity with the provisions of this Agreement;
>
> b) limit access to the Provider's Confidential Information to its employees who are aware of the proprietary nature and obligations of this Agreement and have a need-to-know in connection with the Discussions;
>
> c) be responsible for any breach of the terms hereunder by the Recipient or any person who receives or has access to any Confidential Information of the Provider through the Recipient. See Exhibit 3.

16. Emerging Strategy utilizes a third-party online Customer Relationship Management ("CRM") based software called "Pipedrive" to upload and secure Confidential Information, including, but not limited to, valuable client lists and client contact information.

17. To access Pipedrive, each authorized Emerging Strategy employee must create unique login credentials by establishing a password directly through Pipedrive.

18. Once unique login credentials are created by an authorized Emerging Strategy employee, the Emerging Strategy employee is able to access the CRM system. No Emerging Strategy employee is permitted to access the CRM system using another employee's login credentials.

19. During the term of their employment with Plaintiffs, Tintchev and Ernst each had access to CRM via their own unique login credential. On or about February 9, 2017, Tintchev and Ernst gained unauthorized access into the CRM system using the login credentials of Plaintiffs' independent contractor, Brian Kuzon, because their own access to the CRM system had been terminated in connection with their departure employees of Emerging Strategy. Tintchev and Ernst logged onto the CRM system to access Pipedrive between 8:32PM EST and 9:28PM EST, without the consent or authorization of Emerging Strategy, and improperly downloaded at least 7 different files in CSV and XLS format.

20. Ernst resigned from his employment with Emerging Strategy effective February 3, 2017.

21. Tintchev was terminated from his employment with Emerging Strategy on February 9, 2017.

22. The files Tintchev and Ernst misappropriated contained proprietary and Confidential Information that included, among other things, the names and/or identities of current and prospective clients and the nature of transaction or prospective transaction between the client and Emerging Strategy.

23. In addition, unbeknownst to Emerging Strategy, and without its consent or authorization, Tintchev and Ernst downloaded and/or extracted a complete list of 4606 individual contacts from the CRM system via Pipedrive; this download consisted of Emerging Strategy's complete current and prospective client list.

24. The following is a summary of the files that were downloaded from the CRM system via Pipedrive by Tintchev and Ernst in violation of the Confidentiality and NDA:

a) CSV file: deal_09-02-2017_20-32; this download extracted 150 deals and/or transactions between Emerging Strategy and current and/or prospective clients, along with detailed client contact information;

b) Excel file: deal_09-02-2017_20-36; this download extracted 150 deals and/or transactions between Emerging Strategy and current and/or prospective clients, along with detailed client contact information;

c) Excel file: deal_09-02-2017_20-46; this download extracted 150 deals and/or transactions between Emerging Strategy and current and/or prospective clients, along with detailed client contact information;

d) Excel file: person_09-02-2017_20-52; this download extracted a complete list of 4606 individual contacts and/or clients, along with detailed client contact information;

e) Excel file: person_09-02-2017_20-59; this download extracted a complete list of 4606 individual contacts and/or clients, along with detailed client contact information;

f) Excel file: person_09-02-2017_21-01; this download again extracted the same complete list of 4606 individual contacts and/or clients, along with detailed client contact information;

g) Excel file: 09-02-2017_21-28; this download again extracted the same complete list of 4606 individual contacts and/or clients, along with detailed client contact information;

25. Further investigation may reveal that Tintchev and Ernst misappropriated additional files and proprietary and Confidential Information from Plaintiffs.

26. At or about the same time Tintchev and Ernst were breaching the CRM system and misappropriating Emerging Strategy's proprietary information, Tintchev and Ernst began a disparaging and defamatory email campaign to convince Emerging Strategy clients and prospective clients to stop doing business with Emerging Strategy and continue to work with Tintchev and Ernst. They also began a disparaging and defamatory social media campaign to dissuade prospective employees from joining Emerging Strategy.

27. On or about February 9, 2017 at 10:33 AM EST, Tintchev emailed an individual from Stone Ridge - one of Emerging Strategy's prospective clients - and stated:

> Hi Andy- wanted to personally let you know I've left Emerging Strategy. No need for today's call. I would advise against engaging with the company and finding a more suitable partner to meet your needs. Email to Stone Ridge, attached as Exhibit 4.

28. Tintchev and Ernst continued this campaign to disparage Emerging Strategy and to procure its clients in a second email Tintchev sent on or about February 10, 2017 at 9:46 AM EST to Cummins – another of Emerging Strategy's prospective clients – and stated:

> Hi Vijay- I wanted to personally let you know I've left Emerging Strategy. No need for today's call. I very much appreciate your time and optimistic to keep in touch and reconnect in the future. I would advise to avoid contracting with ES and to seek a more viable research partner." Email to Cummins, attached as Exhibit 5.

29. Immediately thereafter, on or about February 10, 2017 at 9:48 AM EST, Tintchev emailed Andrew Crook, Emerging Strategy's Chief Talent Officer, and expressly 1) admitted and acknowledged extraction of the entire CRM via Pipedrive, 2) threatened to continue his and Ernst's campaign to steal clients away from Emerging Strategy and damage Emerging Strategy's reputation by emailing Emerging Strategy's entire contact list, a list unlawfully extracted through the CRM system via Pipedrive, and 3) further defame Emerging Strategy via public avenues of social media, specifically, LinkedIn and Glassdoor. Email to Crook, attached as Exhibit 6.

30. Upon information and belief, on February 10, 2017, immediately after Tintchev's and Ernsts' termination from employment with Emerging Strategy, Defendants' uploaded three false, damaging, and defamatory posts about Emerging Strategy and Adil Husain on Glassdoor:

> a) **Career suicide – Stay away**! Toxic, unethical environment with zero leadership and accountability… . Unrealistic expectations set by CEO…;

b) No benefits and no HR department to help;

c) Deceptive, vague, unorganized interview process. Limited transparency into the actual state of the company… . Glassdoor Posts, attached as Exhibit 7.

31. In addition, Tintchev possesses multiple unlicensed firearms at his residence in the District of Columbia.

## CLAIMS FOR RELIEF

### COUNT ONE
(TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE)

32. The allegations in Paragraphs 1 through 31 of the Complaint are reincorporated herein.

33. As employees of Emerging Strategy, Defendants, by virtue of their employment and position as Director of Sales, were aware of Emerging Strategy's contractual relationship between Emerging Strategy and current and/or prospective clients.

Emerging Strategy has established relationships with numerous prospective clients and businesses that are interested in utilizing Emerging Strategy's services to the substantial benefit of Emerging Strategy.

34. Defendants have intentionally, maliciously, and without justification or privilege acted to deprive Emerging Strategy and Adil Husain of their prospective and/or existing customer and/or clients by, among other things, disparaging and defaming Emerging Strategy and by misappropriating and misusing Emerging Strategy's Confidential Information.

35. In addition, Tintchev, in concert with Ernst, has intentionally, maliciously, and without justification or privilege acted to deprive Emerging Strategy of prospective business with Stone Ridge and Cummins by expressly advising Stone Ridge and Cummins to refrain from conducting business with Emerging Strategy.

36. Tintchev's interference, done in concert with Ernst, with Emerging Strategy's business relationship with Stone Ridge and Cummins was wrongful and tortious.

37 As a direct and proximate result of Defendants' conduct known to-date, Emerging Strategy may incur damages in the amount to $1,200,000.00, the immediate potential value of Emerging Strategy's relationships with Stone Ridge and Cummins.

38. Tintchev, in concert with Ernst, has made clear that they will continue to interfere with Emerging Strategy's other current and prospective clients. See Exhibit 6.

39. Tintchev's and Ernst's willful, unauthorized, and malicious extraction and download from Emerging Strategy's CRM system of 150 deals and/or transactions and 4606 business individuals, along with detailed contact information – is for the sole purpose of intentionally and willfully interfering with Emerging Strategy's ongoing business relationships with its current and/or prospective clients.

40. There is no justification or privilege for the conduct Tintchev and Ernst are threatening.

41. As a further result of Tintchev's and Ernst's tortious actions, and as expressly acknowledged in Paragraph 7 of the Confidentiality and NDA (see Count VIII below), Emerging Strategy has been and will continue to be substantially and irreparably damaged.

42. The permanent loss of its prospective customers and the damage to Emerging Strategy's reputation cannot be redressed solely by money damages. Thus, Emerging Strategy will not have an adequate remedy at law for the harm and damage Defendants have caused it to suffer as a result of the acts of Defendants tortious interference with Emerging Strategy's business relations those acts have caused and will continue to cause.

**COUNT TWO**
(BREACH OF CONTRACT)

43. The allegations in Paragraphs 1 through 42 of the Complaint are reincorporated herein.

44. On April 11, 2016 Tintchev executed and accepted Emerging Strategy's Offer of Employment. See Exhibit 1

45. On June 1, 2016, Ernst executed and accepted Emerging Strategy's Offer of Employment. See Exhibit 2

46. Pursuant to Emerging Strategy's usual and customary practice and policy, as set forth above, the Offer of Employment contained an express Confidentiality Agreement provision that stated, in pertinent part,

> As condition of employment, you will be required to execute the Company's confidentiality agreement and non-solicitation agreement.

47. As a condition of employment with Emerging Strategy, pursuant to Emerging Strategy's usual and customary practice and policy, Defendants are subject to the terms and conditions of the Confidentiality & NDA.

48. The Confidentiality and NDA is reasonable, valid, and enforceable.

49. Emerging Strategy has complied fully with the Confidentiality and NDA.

50. Defendants have breached the Confidentiality and NDA by:

> a) extracting and downloading Confidential Information, as defined above, without consent of Emerging Strategy, and;
>
> b) disclosing terms and conditions to third parties without conforming to the provisions of the Confidentiality and NDA.

51. As a direct and proximate cause of Defendants' conduct known to date as a result of these breaches, Emerging Strategy has sustained damages in the amount of at least $1,200,000.00.

52. As a further result of Defendants' breaches, Emerging Strategy has been and will continuc to scvcrcly and irreparably harmed.

53. As a proximate result of Defendants' conduct, Emerging Strategy will continue to suffer immediate and irreparable harm, damage, detriment, and injury for which there is no adequate remedy at law.

**COUNT THREE**
(CONVERSION)

54. The allegations in Paragraphs 1 through 53 of the Complaint are reincorporated herein.

55. Emerging Strategy has sole and unequivocal legal ownership of propriety and Confidential Information concerning all aspects of its business, including, but not limited to financial statements, business and marketing plans, customer/client transactions, customer/client lists, and prospective contractual relations.

56. This proprietary and Confidential Information was secured and uploaded onto the CRM system via Pipedrive by authorized Emerging Strategy employees.

57. Defendants' wrongfully extracted, downloaded, and misappropriated Emerging Strategy's propriety and Confidential Information, including, but not limited to customer/client transactions, customer/client lists, and prospective contractual relations in violation of Emerging Strategy's property rights, as described in detail above.

58. As a direct and proximate result of Defendants' acts of conversion, Emerging Strategy has been deprived of is property rights and has suffered known damages in excess of $1,200,000.00.

59. The aforementioned acts of Defendants' were willful, wanton, malicious, and oppressive, and were undertaken with the intent to defraud, and justify the awarding of exemplary and punitive damages.

60. As a direct and proximate result of Defendants' conduct, Emerging Strategy will continue to suffer immediate and irreparable harm, damage, detriment, and injury for which there is no adequate remedy at law.

**COUNT FOUR**
(DEFAMATION)

61. The allegations in Paragraphs 1 through 60 of the Complaint are reincorporated herein.

62. To date and known to Emerging Strategy, Tintchev, in concert with Ernst, has made two defamatory statements.

63. Specifically, Tintchev, in concert with Ernst, made the following defamatory statement to a representative of Cummins:

> Hi Vijay- I wanted to personally let you know I've left Emerging Strategy. No need for today's call. I very much appreciate your time and optimistic to keep in touch and reconnect in the future. I would advise to avoid contracting with ES and to seek a more viable research partner. See Exhibit 5.

64. Tintchev, in concert with Ernst, made the following defamatory statement to a representative of Stone Ridge:

> Hi Andy- wanted to personally let you know I've left Emerging Strategy. No need for today's call. I would advise against engaging with the

> company and finding a more suitable partner to meet your needs. See Exhibit 4.

65. In addition, in a further attempt to defame Emerging Strategy and Adil Husain, upon information and belief, Tinchev and Ernst have publicly made defamatory statements via an online public employment forum, specifically, Glassdoor.

66. Upon information and belief, on February 10, 2017, immediately after Tintchev's and Ernsts' termination from employment with Emerging Strategy, Defendants' uploaded three false, damaging, and defamatory posts about Emerging Strategy and Adil Husain on Glassdoor:

> a) **Career suicide – Stay away**! Toxic, unethical environment with zero leadership and accountability… . Unrealistic expectations set by CEO…;
>
> b) No benefits and no HR department to help;
>
> c) Deceptive, vague, unorganized interview process. Limited transparency into the actual state of the company… . See Exhibit 7.

67. The two former statements, and online posts on Glassdoor – known to-date - are not only false, but are a complete misrepresentation of the quality and business acumen of Emerging Strategy's outstanding global reputation as company and employer.

68. As a direct and proximate result of Defendants' defamatory statements, Emerging Strategy will suffer damages in an amount to be determined at trial.

69. As a direct and proximate result of Defendants' conduct, Emerging Strategy will continue to suffer immediate and irreparable harm, damage, detriment, and injury for which there is no adequate remedy at law.

**COUNT FIVE**
(CIVIL CONSPIRACY)

70. The allegations in Paragraph 1 through 69 of the Complaint are incorporated herein.

71. Defendants knowingly, willfully, and unlawfully conspired in agreement to facilitate a scheme which included extracting and downloading Confidential Information, as defined above, without the consent or authorization of Emerging Strategy, from the CRM system via Pipedrive, through the use of another employee's login credentials; this download consisted of Emerging Strategy's complete and current prospective client list and a list of 150 transactions or prospective transactions between Emerging Strategy and their clients.

72. Upon information and belief, a third former Emerging Strategy employee may have also acted in concert with Tintchev and Ernst.

73. Upon information and belief, the conspiracy between Tintchev and Ernst commenced at least as early as February 2017 and is ongoing.

74. The conspiracy's purpose and intent is malicious; Defendants seek to deprive Emerging Strategy and Adil Husain of its existing customer and/or clients with ongoing contractual relationships by, among other things, disparaging and defaming Emerging Strategy's reputation as an employer and company and by misappropriating and misusing Emerging Strategy's Confidential Information downloaded from the CRM system via Pipedrive.

75. Defendants acted in concert to facilitate and advance the conspiracy's purpose and intent as set forth above, and the damage to Plaintiffs was a reasonable foreseeable consequence.

76. Tintchev and Ernst have acted in conspiracy in furtherance of Counts I, II, III, and IV.

77. As a direct and proximate result of Defendants' conspiracy, Emerging Strategy has been suffered known damages in excess of $1,200,000.00.

78 As a direct and proximate result of Defendants' conduct, Emerging Strategy will continue to suffer immediate and irreparable harm, damage, detriment, and injury for which there is no adequate remedy at law.

**COUNT SIX**
(AIDING and ABETTING BREACH OF CONTRACT)

79. The allegations of Paragraphs 1 through 78 of the Complaint are reincorporated herein.

80. Upon information and belief, Defendants' aided, abetted, compelled and/or coerced Brian Kuzon, a former employee of Emerging Strategy and currently an independent contractor with Emerging Strategy, to supply his unique login credentials in order to permit Defendants to access the CRM via Pipedrive.

81 As set forth above, pursuant to Emerging Strategy's usual and customary practice and policy, Kuzon's Offer of Employment included a Confidentiality Agreement provision, which states, in pertinent part,

> As condition of employment, you will be required to execute the Company's confidentiality agreement and non-solicitation agreement.

82. Kuzon executed and accepted the terms and conditions contained within Emerging Strategy's Confidentiality & NDA.

83. Specifically, Paragraph 2 of the Confidentiality & NDA expressly prohibits the disclosure of "Confidential Information," stating,

> The Recipient shall:
>
> a) not use or disclose any Confidential Information of the Provider to third parties other than in conformity with the provisions of this Agreement;

> b) limit access to the Provider's Confidential Information to its employees who are aware of the proprietary nature and obligations of this Agreement and have a need-to-know in connection with the Discussions;
>
> c) be responsible for any breach of the terms hereunder by the Recipient or any person who receives or has access to any Confidential Information of the Provider through the Recipient.

84. Pursuant to the terms of the Confidentiality & NDA, Kuzon was prohibited from disclosing his Pipedrive unique login credentials to any other person.

85. Tintchev and Ernst aided, abetted, compelled and/or coerced Kuzon to breach the Confidentiality & NDA.

86. Tintchev and Ernst unlawfully used Kuzon's unique login credentials to access the CRM via Pipedrive to intentionally, maliciously, and without justification or privilege deprive Emerging Strategy and Adil Husain of their existing customer and/or clients with ongoing contractual and prospective business relationships by, among other things, disparaging and defaming Emerging Strategy and by misappropriating and misusing Emerging Strategy's Confidential Information.

87. As a direct proximate cause of Tintchev and Ernst aiding and abetting Kuzon's breach of the Confidentiality & NDA, Emerging Strategy has sustained damages in the amount of at least $1,200,000.00.

88. As a direct and proximate result of Defendants' conduct, Emerging Strategy will continue to suffer immediate and irreparable harm, damage, detriment, and injury for which there is no adequate remedy at law.

**COUNT SEVEN**
(PRELIMINARY AND PERMANENT INJUNCTION)

89. The allegations in Paragraphs 1 through 88 of the Complaint are reincorporated herein.

90. Paragraph 7 of the Confidentiality and NDA, entitled "Injunctive Relief and Costs of Enforcement," expressly states:

> Each party acknowledges that any breach of this Agreement would cause irreparable harm to the other which would be difficult, if not impossible, to quantify in monetary damages. The Recipient consents to the grant of immediate injunctive relief to the Provider upon material breach of this Agreement, in addition to all other remedies available in equity and at law. The Recipient waives any requirement that the Provider posts a bond in connection with any application for or order granting injunctive relief. The prevailing party shall be entitled to recover its costs of suit and reasonable expenses in any suit to enforce this Agreement. See Exhibit 3.

91. Defendants have already set in motion their intentional and unlawful breach of the Confidentiality & NDA as demonstrated through their 1) wrongful and unauthorized extraction and download of Emerging Strategy's proprietary and Confidential Information and 2) their disparaging and defamatory contacts with Emerging Strategy's client base.

92. As set forth above, Tintchev, in his email to Andrew Crook, and in concert with Ernst, intends to continue their unlawful and extortive activity, and Plaintiffs continue to and will continue to suffer irreparable harm – for which there is no adequate remedy at law. Emerging Strategy's very economic existence depends on its established current and prospective client base which is in absolute jeopardy in the hands of Tintchev and Ernst.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the Court grant Plaintiffs the following relief on an emergency and expedited basis:

A. That Defendants be held liable under each Count set forth in this Complaint, and that Plaintiffs receive all such relief; including injunctive, monetary, or other relief sought hereunder.

B. A preliminary and/or permanent injunction prohibiting Defendants from using or disclosing proprietary or Confidential Information and/or duplicating any of the confidential or proprietary information, including, but not limited to the 4606 individual contacts, including detailed contact information, prohibiting Defendants from disclosing the 150 deals and/or transactions between Emerging Strategy and current and/or prospective clients, and ordering Defendants immediately to return to Emerging Strategy all of the files proprietary information belonging to it.

C. A preliminary and/or permanent injunction prohibiting Defendants from directly or indirectly soliciting or inducing clients about whom they had knowledge based on their prior employment with Emerging Strategy for the purposes of entering into a competitive business relationship.

D. A preliminary and/or permanent injunction prohibiting Defendants from interfering with Emerging Strategy's agreements with Stone Ridge and Cummins.

E. A preliminary and/or permanent injunction prohibiting Defendants from interfering with Emerging Strategy's ongoing agreement and/or negotiations with its clients, prospective clients, and prospective employees, including the immediate cessation of any further business disparagement or defamation, whether through direct contacts, "anonymous" postings

on social media, or any other means of communication, whether individually or through third parties.

F. A preliminary and/or permanent injunction prohibiting Tinchev from physically coming within 1/5 of a mile from Emerging Strategy's physical address 4601 North Fairfax Drive, Arlington, VA 22203 and prohibiting Tintchev and Ernst from contacting physically or via electronic communication, or otherwise, any employee, agent, contractor and/or director of Emerging Strategy

G. That Defendant be required to pay all damages, including, but not limited to $1,200,000.00 in compensatory damages for the Counts alleged above, punitive damages, and reasonable attorneys' fees and costs pursuant to Paragraph 7 of the Confidentiality and NDA.

Respectfully submitted,

By:______________________________

Jeffrey E. McFadden (DC Bar No.: 434234)
Simran Rahi (DC Bar No.: 1024606)
Stradley Ronon Stevens & Young, LLP
1250 Connecticut Ave., N.W., Suite 500
Washington, D.C. 200036
Tel.: (202) 507-5150
Fax: (202) 822-0140
jmcfadden@stradley.com
*Counsel for Plaintiffs*

# EXHIBITS

Emerging Strategy

11 April 2016

Vladimir Tintchev
4720 Brandywine St NW
Washington, D.C. 20016

Dear Vlady,

I am pleased to send you this offer for the position of Director of Sales at Emerging Strategy in our North America team. I look forward to having you play an important role in the team we're building. We are excited about your prospects at the firm.

Emerging Strategy has partnered with Innovative Employee Solutions (IES) to offer employer of record services. Your daily supervision will be by Emerging Strategy, however IES will administer all employer of record duties including the issuance of paychecks.

This offer is for an employment at will position under the following terms and conditions:

**Start Date:** 22 April 2016. Work location will be your home address.

**Base Salary:** Your base salary for this position is $4167 twice per month, which is equivalent to an annual base of $100,000. The position of Director of Sales is considered to be EXEMPT for purposes of federal wage-hour law which means you WILL NOT be eligible to earn overtime.

**Commissions:** You will participate in the Company's uncapped commission plan described in the table below:

| Type of Revenue | Priority | Responsibility | Commission |
|---|---|---|---|
| **"On-Request" deal into new account** | **High Priority** | **Full cycle** | **10%** |
| Renewal of existing "On-Request" deal | High Priority | First annual renewal for a new account | 3% |
| Additional "On-Request" deal into an existing "On-Request" account | Opportunistic | Full cycle | 5% |
| Ad hoc research project as a trial prior to an "On-Request" deal closure | Only if necessary | Full cycle | 5% |
| Advisory Services ad hoc project | Opportunistic | Referral of qualified opportunity to AS team | 5% |

Emerging Strategy will pay out commissions based on payments received from its customers. Commissions will be paid at the end of each quarter. Payment date will be the 10th calendar day of the first month of the following quarter.

**EXHIBIT 1**

In the event of termination of employment, you will be paid out earned commissions on payments received by the company within a 90 day period after your last date of employment with the company.

The commission plan outlined above covers the period from 22 April 2016 to 31st December 2016, however management reserves the right to change commission terms at any time with a 30 days' notice. The 2017 commission plan will be presented by 30th November 2016.

**Operating Responsibilities:** Reference Job Description attached.

**Reporting To (Interim Basis):** Adil Husain, Managing Director

**Benefits:** Innovative Employee Solutions offers a competitive benefits package, including a variety of programs you can choose from to meet your and your family's needs. Coverage will be effective the first of the month following a 30 day waiting period. Medical and dental is offered through Anthem Blue Cross and vision is offered through EyeMed Vision.

You will receive an email from the IES Benefits Team with instructions on how to enroll in benefits during the enrollment window through our IES self-service benefits system. Participation is voluntary but you must go through the enrollment process to waive or elect coverage.

**Holiday/Vacation/Sick Time:** In addition to Federal Public Holidays and minimum paid sick leave according to Washington, DC regulations, after 90 days of employment you will accrue paid time off benefits, including up to 15 days per year inclusive of vacation leave and sick leave, and must be approved by your manager.

**Expenses:** The Company will provide to you a company laptop and a VOIP phone router for unlimited US/Canada phone calls, both pieces of equipment you are required to return. Other reasonable approved business expenses will be reimbursed to you according to the Company's expense reimbursement policy.

**Confidentiality Agreement:** As a condition of employment, you will be required to execute the Company's confidentiality agreement and non-solicitation agreement.

**At-Will Employment:** Because this letter is intended only as an outline of some important aspects about this job, it does not form a contract. IES is an at-will employer and operates under the provisions that employees have the right to resign their position at any time, with or without notice and with or without cause. IES has similar rights to terminate the employment relationship, with or without notice and with or without cause. If the assignment is terminated after the start date, you will be entitled to receive compensation earned through the time of termination, but we shall have no other obligation or liability to you other than the payment of such earned compensation. If termination is before the start date, we shall have no obligation or liability to you.

**Reference and Background Checks:** By accepting this offer of employment you are authorizing us to conduct reference and background checks. This offer will ultimately be contingent upon the successful completion of both.

Please indicate your acceptance of these terms and conditions by signing below and returning to me no later than 6pm Tuesday 12 April, 2016.

Sincerely,

Adil Husain

**Candidate:**

BY SIGNING BELOW, I ACCEPT THE TERMS AND CONDITIONS OF THIS OFFER LETTER.

Vladimir Tintchev — 4/11/2016

Name — Date

## Director of Sales Job Description:

**Company Description**

Emerging Strategy is the essential provider of decision support for global B2B companies through targeted, customized and insightful market intelligence. Emerging Strategy partners with executives who need external insights to drive business results and avoid blind spots. Our "On-Request" model provides access to customized top-down market intelligence that is available quickly, conveniently, globally, and in unlimited amount at a fixed annual investment. Advisory Services are available on a fee-per-project basis for complex projects requiring deep research and analysis in order to arrive at new-to-the-world insights and recommendations. We operate across more than 50 countries in 6 continents and are known for our unique abilities in particularly challenging environments such as emerging markets and other opaque markets.

**Key Differentiators**

- First-hand understanding of the challenges of international business
- Customized content
- "Feet-on-the-ground"
- Highest level of professionalism and client service
- Timely and cost efficient

**Overview**

The ideal candidate will be an experienced, independent inside sales professional with a proven track record originating and closing five and six-figure deals to mid-senior level business research and global market intelligence buyers within Fortune 2000 companies.

We are looking for highly focused, goal-oriented candidates looking to take their careers to the next level by leveraging our impeccable reputation, world-class sales leadership and early market position to overachieve personal and professional goals.

**Accountabilities**

- Meet new business sales targets
- Demonstrate the commitment and accountability required to overachieve personal goals outlined in annual, quarterly and monthly sales action plans.
- Consistently track, report and analyze your sales pipeline in order to produce the volume and forecast accuracy required to deliver team and corporate goals
- Outbound lead-generation on targeted industries, locations, or accounts, through phone and email campaigns

**Responsibilities**

- Leverage email, phone and sales 2.0 tools to proactively identify and qualify new research and market intelligence sales opportunities within large companies headquartered in the U.S.
- Provoke interest and build value for traditionally unbudgeted purchases that can deliver significant and measureable impact to the customer.
- Propose, negotiate, close and transition new customers within a consultative, inside sales environment

- Leverage our customer and product-service training to effectively take control of and disrupt traditional buying cycles.
- Background research on companies, industries etc. to identify potential business opportunities
- Possess expert-level knowledge of at least one major commercial sector, and keep up to date with business news, commentary and the latest trends in those sectors
- Clarity and consistency in client communications, discussions documents, proposals and pricing schemes
- Proven ability to self-manage to high performance standards, via the development of your own world-class consultative sales mindset, skillset and toolset.
- Assess customer and market needs and adjust approach to customer and discussion of product accordingly
- Gain client respect by competence, reliability
- Follow up on details after every client interaction

**Background and Skills**

- 5+ years selling conceptual services and/or research and market intelligence
- Verifiable history of accountability, perseverance and over-quota achievement via the high-volume sale of deals from $50,000 to $100,000 or higher
- Deep understanding of the support functions within Global 2000 companies that provide market insight to senior executives, including Strategy and Planning, Market Research, Market and Competitive Intelligence etc.
- Deep understanding of the needs of senior executives holding P&L responsibility at Global 2000 companies
- Deep knowledge of mid-level decision-making dynamics within Global 2000 companies and C-Level dynamics within SMEs
- Attributes required to lead complex sales initiatives on your own that may include people with diverse titles, skills, personalities and goals from across the organization Attention to detail
- The curiosity of a life-long learner and the demonstrated commitment to your own personal and professional development.
- Strong articulation skills through excellent writing, oral communication and presentation
- Very high level of conversational and interviewing skills
- Ability to learn new things quickly and independently and the ability to “figure out” a solution when stuck
- Strong entrepreneurial spirit that makes you comfortable being challenged and taking on calculated business risks.
- Strong task-orientation with problem-solving skills that allow you to operate as an autonomous member of the team
- Disciplined sales data collection on CRM platform
- High degree of computer literacy, knowledge of common business productivity tools and concepts, excellent Microsoft Office skills
- Bachelor degree

**Compensation:** Base salary, plus uncapped commission earnings, plus benefits
**Location:** Home Office

Emerging Strategy

30 May 2016

Edward Ernst
163 Attorney Street, Apt. 3C
New York, NY 10003

Dear Edward,

I am pleased to send you this offer for the position of Director of Sales at Emerging Strategy in our North America team. I look forward to having you play an important role in the team we're building. We are excited about your prospects at the firm.

Emerging Strategy has partnered with Innovative Employee Solutions (IES) to offer employer of record services. Your daily supervision will be by Emerging Strategy, however IES will administer all employer of record duties including the issuance of paychecks.

This offer is for an employment at will position under the following terms and conditions:

**Start Date:** 13 June 2016. Work location will be your home address.

**Base Salary:** Your base salary for this position is $3333 twice per month, which is equivalent to an annual base of $80,000. The position of Director of Sales is considered to be EXEMPT for purposes of federal wage-hour law which means you WILL NOT be eligible to earn overtime.

**Commissions:** You will participate in the Company's uncapped commission plan described in the table below:

| **Type of Revenue** | **Priority** | **Responsibility** | **Commission** |
|---|---|---|---|
| **"On-Request" deal into new account** | **High Priority** | **Full cycle** | **10%** |
| Renewal of existing "On-Request" deal | High Priority | First annual renewal for a new account | 3% |
| Additional "On-Request" deal into an existing "On-Request" account | Opportunistic | Full cycle | 5% |
| Ad hoc research project as a trial prior to an "On-Request" deal closure | Only if necessary | Full cycle | 5% |
| Advisory Services ad hoc project | Opportunistic | Referral of qualified opportunity to AS team | 5% |

Emerging Strategy will pay out commissions based on payments received from its customers. Commissions will be paid at the end of each quarter. Payment date will be the 10th calendar day of the first month of the following quarter.

**EXHIBIT 2**

In the event of termination of employment, you will be paid out earned commissions on payments received by the company within a 90 day period after your last date of employment with the company.

The commission plan outlined above covers the period from 13 June 2016 to 31st December 2016, however management reserves the right to change commission terms at any time with a 30 days' notice. The 2017 commission plan will be presented by 30th November 2016.

**Operating Responsibilities:** Reference Job Description attached.

**Reporting To (Interim Basis):** Adil Husain, Managing Director

**Benefits:** Innovative Employee Solutions offers a competitive benefits package, including a variety of programs you can choose from to meet your and your family's needs. Coverage will be effective the first of the month following a 30 day waiting period. Medical and dental is offered through Anthem Blue Cross and vision is offered through EyeMed Vision.

You will receive an email from the IES Benefits Team with instructions on how to enroll in benefits during the enrollment window through our IES self-service benefits system. Participation is voluntary but you must go through the enrollment process to waive or elect coverage.

**Holiday/Vacation/Sick Time:** In addition to Federal Public Holidays and minimum paid sick leave according to Washington, DC regulations, after 90 days of employment you will accrue paid time off benefits, including up to 15 days per year inclusive of vacation leave and sick leave, and must be approved by your manager.

**Expenses:** The Company will provide to you a company laptop and a VOIP phone router for unlimited US/Canada phone calls, both pieces of equipment you are required to return. Other reasonable approved business expenses will be reimbursed to you according to the Company's expense reimbursement policy.

**Confidentiality Agreement:** As a condition of employment, you will be required to execute the Company's confidentiality agreement and non-solicitation agreement.

**At-Will Employment:** Because this letter is intended only as an outline of some important aspects about this job, it does not form a contract. IES is an at-will employer and operates under the provisions that employees have the right to resign their position at any time, with or without notice and with or without cause. IES has similar rights to terminate the employment relationship, with or without notice and with or without cause. If the assignment is terminated after the start date, you will be entitled to receive compensation earned through the time of termination, but we shall have no other obligation or liability to you other than the payment of such earned compensation. If termination is before the start date, we shall have no obligation or liability to you.

**Reference and Background Checks:** By accepting this offer of employment you are authorizing us to conduct reference and background checks. This offer will ultimately be contingent upon the successful completion of both.

Please indicate your acceptance of these terms and conditions by signing below and returning to me no later than 6pm Tuesday 31 May, 2016.

Sincerely,

Adil Husain

**Candidate:**

BY SIGNING BELOW, I ACCEPT THE TERMS AND CONDITIONS OF THIS OFFER LETTER.

Name

6/1/16

Date

## Director of Sales Job Description:

**Company Description**
Emerging Strategy is the essential provider of decision support for global B2B companies through targeted, customized and insightful market intelligence. Emerging Strategy partners with executives who need external insights to drive business results and avoid blind spots. Our "On-Request" model provides access to customized top-down market intelligence that is available quickly, conveniently, globally, and in unlimited amount at a fixed annual investment. Advisory Services are available on a fee-per-project basis for complex projects requiring deep research and analysis in order to arrive at new-to-the-world insights and recommendations. We operate across more than 50 countries in 6 continents and are known for our unique abilities in particularly challenging environments such as emerging markets and other opaque markets.

**Key Differentiators**

- First-hand understanding of the challenges of international business
- Customized content
- "Feet-on-the-ground"
- Highest level of professionalism and client service
- Timely and cost efficient

**Overview**
The ideal candidate will be an experienced, independent inside sales professional with a proven track record originating and closing five and six-figure deals to mid-senior level business research and global market intelligence buyers within Fortune 2000 companies.

We are looking for highly focused, goal-oriented candidates looking to take their careers to the next level by leveraging our impeccable reputation, world-class sales leadership and early market position to overachieve personal and professional goals.

**Accountabilities**

- Meet new business sales targets
- Demonstrate the commitment and accountability required to overachieve personal goals outlined in annual, quarterly and monthly sales action plans.
- Consistently track, report and analyze your sales pipeline in order to produce the volume and forecast accuracy required to deliver team and corporate goals
- Outbound lead-generation on targeted industries, locations, or accounts, through phone and email campaigns

**Responsibilities**

- Leverage email, phone and sales 2.0 tools to proactively identify and qualify new research and market intelligence sales opportunities within large companies headquartered in the U.S.
- Provoke interest and build value for traditionally unbudgeted purchases that can deliver significant and measureable impact to the customer.
- Propose, negotiate, close and transition new customers within a consultative, inside sales environment

- Leverage our customer and product-service training to effectively take control of and disrupt traditional buying cycles.
- Background research on companies, industries etc. to identify potential business opportunities
- Possess expert-level knowledge of at least one major commercial sector, and keep up to date with business news, commentary and the latest trends in those sectors
- Clarity and consistency in client communications, discussions documents, proposals and pricing schemes
- Proven ability to self-manage to high performance standards, via the development of your own world-class consultative sales mindset, skillset and toolset.
- Assess customer and market needs and adjust approach to customer and discussion of product accordingly
- Gain client respect by competence, reliability
- Follow up on details after every client interaction

**Background and Skills**

- 5+ years selling conceptual services and/or research and market intelligence
- Verifiable history of accountability, perseverance and over-quota achievement via the high-volume sale of deals from $50,000 to $100,000 or higher
- Deep understanding of the support functions within Global 2000 companies that provide market insight to senior executives, including Strategy and Planning, Market Research, Market and Competitive Intelligence etc.
- Deep understanding of the needs of senior executives holding P&L responsibility at Global 2000 companies
- Deep knowledge of mid-level decision-making dynamics within Global 2000 companies and C-Level dynamics within SMEs
- Attributes required to lead complex sales initiatives on your own that may include people with diverse titles, skills, personalities and goals from across the organization Attention to detail
- The curiosity of a life-long learner and the demonstrated commitment to your own personal and professional development.
- Strong articulation skills through excellent writing, oral communication and presentation
- Very high level of conversational and interviewing skills
- Ability to learn new things quickly and independently and the ability to "figure out" a solution when stuck
- Strong entrepreneurial spirit that makes you comfortable being challenged and taking on calculated business risks.
- Strong task-orientation with problem-solving skills that allow you to operate as an autonomous member of the team
- Disciplined sales data collection on CRM platform
- High degree of computer literacy, knowledge of common business productivity tools and concepts, excellent Microsoft Office skills
- Bachelor degree

**Compensation:** Base salary, plus uncapped commission earnings, plus benefits
**Location:** Home Office

## MUTUAL CONFIDENTIALITY & NON-DISCLOSURE AGREEMENT

This Agreement is entered Into on DD.MM.YYYY (the "Effective Date") between Emerging Asia Limited and NAME FAMILY NAME. The parties desire to discuss and may each provide to the other certain confidential and proprietary information for the purpose of evaluating one or more potential transactions or mutually beneficial business relationships (the "Discussions"). The parties agree to the following terms with respect to the treatment and use of such information.

1. **Definition of Confidential Information**

a) As used in this Agreement, the term "Confidential Information" means information that has been or that may be disclosed, in either oral, written, graphic, electronic or any other form, by one party (the "Provider") to the other (the "Recipient"), including, but not limited to, information concerning all aspects of the business of the Provider and its affiliates; financial statements, business and marketing plans; customer/client transactions; customer/client lists; pending or threatened litigation; prospective contractual relations, collection, tabulation and analysis of data; computer programming methods, source code, object code, designs, specifications, plans, drawings and similar materials; programs, databases, inventions (whether or not eligible for legal protection under patent, trademark, or copyright laws) research and development; work in progress; and any other document marked "confidential.". The existence of the Discussions is considered Confidential Information of both parties.

b) The term "Confidential Information" does not include information that: i) was in the public domain prior to the Effective Date of this Agreement or subsequently came into the public domain through no fault of the Recipient; ii) was lawfully received by the Recipient from a third party not, to the Recipient's knowledge, subject to any contractual or fiduciary duty not to disclose; iii) was already known or in the possession of the Recipient prior to receipt thereof from the Provider, as evidenced by the Recipient's written records; or iv) is subsequently and independently developed by employees, consultants or agents of the Recipient without reference to the Confidential Information disclosed by Provider, as evidenced by the Recipient's written records.

2. **Confidentiality**

The Recipient shall:

a) not use or disclose any Confidential Information of the Provider to third parties other than in conformity with the provisions of this Agreement;

b) limit access to the Provider's Confidential Information to its employees who are aware of the proprietary nature and obligations of this Agreement and have a need-to-know in connection with the Discussions;

c) be responsible for any breach of the terms hereunder by the Recipient or any person who receives or has access to any Confidential Information of the Provider through the Recipient.

3. **Duty of Care**

The Recipient shall exercise a reasonable level of care that, at a minimum, will equal or exceed the level of care it would exercise to safeguard its own Confidential Information with regard to Confidential Information received from the Provider.

4. **Compelled Disclosure**

In the event that the Recipient is compelled by law, governmental regulation, court order or other legal process to disclose any Confidential Information of the Provider, it may do so if: i) it provides the Provider with prior written notice of such compelled disclosure (to the extent legally permitted) and ii) it provides the Provider with reasonable assistance, at the Providers' expense, if the Provider determines in its sole discretion to contest the disclosure.

5. **No License or Warranty**

All Confidential Information disclosed by the Provider shall remain the property of the Provider. Nothing in this Agreement shall be construed as granting any license or right under any patent, copyright, trade secret or otherwise, nor shall this Agreement impair the right of either party to contest the scope, validity or alleged infringement of any patent, copyright or trade secret. The Provider does not make any warranty or representation whatsoever as to the accuracy or completeness of such Confidential Information.

6. **Term and Termination**

This Agreement shall commence on the Effective Date and shall apply to all Confidential Information exchanged between the parties until either party provides the other party with written notice that all Discussions have ended ("Termination Notice"). All Confidential Information furnished by the Provider to the Recipient *prior* to the issuance and receipt of the Termination Notice shall be subject to the terms and conditions of this Agreement in perpetuity unless and until such Confidential Information falls within one of the exceptions set forth in Section 1 above. Any Confidential Information furnished by the Provider to the Recipient *after* the issuance and receipt of the Termination Notice shall not be subject to the terms and conditions of this Agreement. Upon the issuance and receipt of the Termination Notice, or the reasonable written request of the Provider, the Recipient shall return or destroy all documents or other matter furnished by the Provider to the Recipient constituting Confidential Information (including all copies, notes, electronic or other records, in any medium whatsoever of Confidential Information) and upon reasonable written request, the Recipient shall confirm in writing to the Provider that it has not retained any such Confidential Information in any medium whatsoever.

7. **Injunctive Relief and Costs of Enforcement**

Each party acknowledges that any breach of this Agreement would cause irreparable harm to the other which would be difficult, if not impossible, to quantify in monetary damages. The Recipient consents to the grant of immediate injunctive relief to the Provider upon material breach of this Agreement, In addition to all other remedies available in equity and at law. The Recipient waives any requirement that the Provider posts a bond in connection with any application for or order granting injunctive relief. The prevailing party shall be entitled to recover its costs of suit and reasonable expenses in any suit to enforce this Agreement.

8. **Miscellaneous**

This Agreement shall be governed by and construed in accordance with the internal laws of the SAR of Hong Kong, without regard to any conflict of laws principles. This Agreement may be modified only in a writing signed by the parties. This Agreement may not be assigned. This Agreement supersedes all prior understandings of the parties relating to Confidential Information.

| Emerging Asia Limited | CONTRACTOR |
|---|---|
| By: ______________________ | By: ______________________ |
| Name: _______Paola Peraboni_ | Name: ______________________ |
| Title: _______HR&Operations Manager_________ | Title: ______________________ |

**EXHIBIT 3**

**Rahi, Simran**

**From:** Vlady Tintchev <vladystintchev@gmail.com>
**Sent:** Thursday, February 09, 2017 11:07 AM
**To:** Andrew Crook
**Subject:** Fwd: Today's call- cancelled

Vlady Tintchev
301.219.7491

Begin forwarded message:

> **From:** "Nam, Andrew" <Andrew.Nam@stoneridge.com>
> **Date:** February 9, 2017 at 10:36:46 AM EST
> **To:** Vlady Tintchev <vladystintchev@gmail.com>
> **Subject: RE: Today's call- cancelled**
>
> Thank you Vlady
> good luck and yes let's keep in touch and I am sure our paths will cross again
> I will look you up on LinkedIn
> Regards
> Andy Nam
> Cell 248-513-9206
>
> -----Original Message-----
> From: Vlady Tintchev [mailto:vladystintchev@gmail.com]
> Sent: Thursday, February 09, 2017 10:33 AM
> To: Nam, Andrew <Andrew.Nam@stoneridge.com>
> Subject: Today's call- cancelled
>
> Hi Andy- wanted to personally let you know I've left Emerging Strategy. No need for today's call. I would advise against engaging with the company and finding a more suitable partner to meet your needs.
>
> Wishing you much success, Andy, and hoping to stay in touch in the future. Best of luck in growing the stoneridge strategy function.
>
> Warm regards,
> Vlady
>
> Vlady Tintchev
> 301.219.7491

**EXHIBIT 4**

**Rahi, Simran**

**From:** Vlady Tintchev <vladystintchev@gmail.com>
**Sent:** Friday, February 10, 2017 9:46 AM
**To:** vijay.a.ramalingam@cummins.com
**Subject:** Today's call- cancelled

Hi Vijay- I wanted to personally let you know I've left Emerging Strategy. No need for today's call. I very much appreciate your time and optimistic to keep in touch and reconnect in the future. I would advise to avoid contracting with ES and to seek a more viable research partner.

Thank you, Vijay. Let's keep in touch.

Vlady Tintchev
301.219.7491

**EXHIBIT 5**

**Rahi, Simran**

**From:** Vlady Tintchev <vladystintchev@gmail.com>
**Sent:** Friday, February 10, 2017 9:48 AM
**To:** Andrew Crook
**Subject:** Fwd: Today's call- cancelled

You might want to tell Adil to prioritize the Vapor payment before the below message goes out to my entire pipeline (I've exported everything out of PD). Also, keep in mind the power of Glassdoor and LinkedIn.

Vlady Tintchev
301.219.7491

Begin forwarded message:

> **From:** Vlady Tintchev <vladystintchev@gmail.com>
> **Date:** February 10, 2017 at 9:45:44 AM EST
> **To:** vijay.a.ramalingam@cummins.com
> **Subject: Today's call- cancelled**
>
> Hi Vijay- I wanted to personally let you know I've left Emerging Strategy. No need for today's call. I very much appreciate your time and optimistic to keep in touch and reconnect in the future. I would advise to avoid contracting with ES and to seek a more viable research partner.
>
> Thank you, Vijay. Let's keep in touch.
>
> Vlady Tintchev
> 301.219.7491

**EXHIBIT 6**


Secure | https://www.glassdoor.com

| 0 | 17 | 1 | 15 | 6 | 4 |
|---|---|---|---|---|---|
| Overview | Reviews | Salaries | Jobs | Interviews | Benefits |

Follow

+ Add a Review

Employee Reviews

"Career suicide- stay away!"

Doesn't Recommend Negative Outlook

I have been working at Emerging Strategy full-time

Pros

Talented research team with incredible potential to build a great product

Cons

Toxic unethical environment with zero leadership and accountability. There is no structure around product development and strategically growing the business. This is not a 40-person company, less than 10 full-time employees around the world. Unrealistic expectations set by a CEO with no prior commercial or product development experience. Zero long-term career development potential. No formal HR function and no CFO. CEO operates autonomously and does not adhere to the formal process on paying incentives.

Advice to Management

Have the common decency and respect for your employees

Helpful

Reviews by Job Title

Intern Analyst (4)

Consultant (3)

Business Analyst (2)

502 Bad Gateway

nginx 1.11.6

Hanover Research – Arlington, VA

MorganFranklin Consulting – Washington, DC

Sign up in seconds to unlock everything on Glassdoor

Sign In

Sign In

Jobs You May Like

Glassdoor – Washington, DC

BCG Attorney Search Inc – Washington, DC

Unlock Your Free Employer Account

**EXHIBIT 7**


Thanks for joining! Check your email to validate your account and begin your Basic Membership.
Emerging Strategy
0
17
1
15
6
4
Follow
+ Add Benefits
Emerging Strategy Benefits
All Employees
US
1.0
Work in HR or Marketing?
Home Equity Line of Credit
1.99%
3.75%
Sandy Spring
LEARN MORE
Employee Benefit Reviews
Most Commented
No benefits and no HR department to help
Helpful
Jobs You May Like
Hanover Research – Arlington VA
MorganFranklin Consulting – Washington DC
Glassdoor – Washington DC
Benefits Summary
List based on reports from current and former employees. It may not be complete.
Insurance, Health & Wellness
Unlock Your Free Employer Account



Thanks for joining! Check your email to validate your account and begin your Basic Membership.

0 Overview | 17 Reviews | 1 Salaries | 15 Jobs | 6 Interviews | 4 Benefits | More

Follow | + Add an Interview

**Candidate Interview Reviews**

Filter

Sort **Popular**

Your trust is our top concern, so companies can't alter or remove reviews

**Sales Interview**

Accepted Offer | Negative Experience | Easy Interview

**Application**

The process took 1+ week. I interviewed at Emerging Strategy (New York, NY) in December 2016

**Interview**

Deceptive, vague, unorganized interview process. Limited transparency into the actual state of the company, untruthful representation of client base (suggesting the company has way more clients than they actually do)

**Interview Questions**

Why do you want to work here?

Helpful

**Emerging Strategy Response**

We take recruitment process and transparency seriously. However, we have no record or recollection of any candidates interviewed for any function in New York in December 2016, let alone someone who was extended an offer and accepted an offer (as reviewer has claimed). Since there is nothing about the identity or story that can be verified, it appears this fake review has been created solely for the purpose of disparaging our firm.

$1,500 Bonus Cash

THE 2016 NISSAN FRONTIER

BUILD

**Jobs You May Like**

Glassdoor – Washington, DC

BCG Attorney Search Inc – Washington, DC

Beacon Hill Staffing Group – Washington, DC

LaSalle Network – Washington, DC

Sleep Number by Select Comfort – Arlington, VA

Decisive Analytics – Arlington, VA

The Cadmus Group – Arlington, VA

Unlock Your Free Employer Account